Michael Catalano, J.
The defendant was arraigned on July 29, 1957 in the City Court of Buffalo on charges of violating subdivisions 5 and 5-a of section 70 of the Vehicle and Traffic Law involving the operation of a motor vehicle while in an intoxicated condition and leaving the scene of an accident without reporting it, respectively; to which the defendant pleaded guilty as charged, when not represented by counsel. Thereafter, the defendant retained an attorney, withdrew his guilty plea and pleaded not guilty. On November 20, 1957, after a trial before a court and jury, the defendant was found guilty on both charges and convicted. He was sentenced to 10 days in the county penitentiary, fined $100 on each charge, and his operator’s license was revoked.
One Januale, a patrolman in the Buffalo police department, who had sworn to the information charging the defendant with both crimes, testified at length for the People. Then on cross-examination he stated that he and his “ partner ”, one Shephard, another policeman, apprehended the defendant about 11:15 p.m. on July 28, 1957. About 11:40 p.m. that same night, a urine sample of the defendant was taken in a bottle; a salt solution *256 was placed in the bottle which was then placed in the witness’ pocket. At about 1:00 a.m. the next day, the witness took the bottle to his home, placed it underneath a vanity dresser in his bedroom, until the next morning at 8:00 a.m. when he picked up the bottle; later he delivered it to one O’Connor, a police chemist assigned to the scientific crime detection laboratory at police headquarters, at 12:00 m. on July 29, 1957. The witness stated that his mother, father-in-law and wife lived with him at his home where the bottle had been kept all night.
Later in the cross-examination of said witness Januale, he testified that he had given certain information to a warrant clerk who wrote out an information identified as defendant’s Exhibit “C” which the witness signed. The trial court identified the information as: “An affidavit of Ealph E. Januale, dated July 29th, 1957, under docket number 14323, information for drunken driving.” When the court asked: “ Now, what is the probative value of this? ” the attorney for the defendant said: “To refute his testimony here in regard to the last information. I am attacking his credibility. This is an affidavit which is subscribed before the clerk of this Court and in which he states certain things, and omits certain other things. ’ ’ The court: ‘ ‘ Mark it in evidence. That is the one that has been dismissed.” The court: “You are going to show — ” Defense counsel: “I am going to show an affidavit which he filled out which is alleging a hit and run and not a drunken driving charge.” Upon objection by the District Attorney, the court struck out the Exhibit “ C ” from evidence and forbade reference to it, to which exception was taken and granted. Thus ended the cross-examination.
Identity and unchanged condition must be first established before a specimen may be allowed in evidence together with the chemist’s testimony or his report. Where material evidence for a conviction of driving while intoxicated is the alcoholic content of a blood or urine specimen, it is essential to show the chain of possession of the sample and the unchanged condition of the container from the time it is taken from the defendant until it is delivered to the chemist. (See People v. Sansalone, 208 Misc. 491, 493.)
Here, such unchanged condition and continuous chain of possession of the sample are missing.
Section 8-a of the Code of Criminal Procedure, entitled “ Impeachment of witness ” provides: “ In addition to impeachment in the manner now permitted by law, any party may introduce proof that a witness has made a prior statement inconsistent with his testimony, irrespective of the fact that *257 the party has called the witness or made the witness his own, provided that such prior inconsistent statement was made in any writing by him subscribed or was made under oath.”
The defendant, through his attorney, upon cross-examination, had the right to question the witness as to whether on a prior occasion he had made a contrary sworn statement on a vital issue of the case; failure to permit this was reversible error (People v. Kenda, 3 A D 2d 80, 85; People v. Konopka, 5 Misc 2d 507, 508-509).
Judgment of conviction reversed on the law, fine remitted, and new trial ordered. Prepare and submit judgment accordingly.