Jambs D. Hopkins, J.
The defendant has appealed from a judgment of conviction rendered [Jan. 6, 1960] in the Court of Special Sessions of the Town of G-reenburgh [Louis M. Galgano, J. P.] for a violation of subdivision 5 of section 70 of the Vehicle and Traffic Law (driving* a motor vehicle while intoxicated). The defendant was tried by the court with a jury.
Except for a question raised by the defendant concerning the admissibility of the results of a blood test administered to him, there would be little necessity to discuss the evidence upon which the jury’s verdict was based. The prosecution established the intoxication of the defendant by the testimony of the arresting officer and a physician with respect to their observation of the defendant’s condition (cf. People v. Eastwood, 14 N. Y. 562), and by evidence that the amount of alcohol in the defendant’s blood was .20% by weight (Vehicle and Traffic Law, § 70, subd. 5; § 71-a). Although the defendant by his own testimony and other testimony presented proof tending to show that he was not intoxicated, the issue of fact was fairly submitted and determined by the jury, and the verdict may not be overturned on appeal (People v. Lefkowitz, 232 App. Div. 18, affd. 257 N. Y. 560).
The defendant attacks the scientific accuracy of the blood test, however, and his contention deserves serious consideration. It appears that after the blood was withdrawn from the defendant by a physician, it was retained by the arresting officer in a bottle as sealed and inscribed by the physician, and then sent by registered mail the same day in a sealed container by him to the New York State Police scientific laboratory at Albany, New York. The container with seal intact was received two days later at the laboratory, the bottle removed and its seal found to be intact. The contents of the bottle were then analyzed, and the results of the test determined as noted above.
The defendant poses two questions to this procedure. He urges in the first instance that the chain of identification of the sample was not established, as required by the authorities (People v. Lesinski, 10 Misc 2d 254; People v. Sansalone, 208 Misc. 491). Doubtless, as these cases hold, proof that the specimen was accessible to persons not called as witnesses at the trial *787 throws such uncertainty concerning the continuing state of the specimen as it existed at-the time it was withdrawn that the test of the specimen is accordingly left in uncertainty and cannot be admitted into evidence. Such decisions are extensions of the general principle which allows the condition of an object at a given time to be shown by its prior condition, provided that the condition remained unchanged during the interval (cf. Peil v. Reinhart, 127 N. Y. 381; Gray v. Siegel-Cooper Co., 187 N. Y. 376; Mironchik v. Sagadahoc S. S. Corp., 255 N. Y. 81). There is no unvarying standard by which the admissibility of the particular evidence may be determined; rather, each case must rest on its own facts, and it is the probative force of the combination of circumstances which must make its appeal to the reason of the court. Here, we must conclude that the fact of the existence of the blood in a sealed bottle and sent by registered mail in a sealed container, and received in the same state at the place of its destination presents reasonable grounds for belief that it was not tampered with in the interval. Proof of the handling of the parcel by post-office employees would manifestly be difficult and add little to the validity of the inference that the sample was unchanged.
The defendant further argues that the analysis could not be accurate, since the sample was subjected to unknown temperature changes during the two days it was in transit. However, the chemist who undertook the analysis testified that a blood specimen in a sealed bottle would not be affected by temperature variation, so far as its alcoholic content would be concerned, unless the seal was not airtight, in which case the alcohol might vaporize in the presence of a high temperature. Even assuming, therefore, that some of the alcohol in the specimen was dissipated before its arrival at the laboratory, the defendant would be benefited rather than prejudiced by that change. There was no testimony on behalf of the defendant which disputed this evidence. Hence, there was no proof which tended to show that the blood test was not carried out in accordance with standard operating procedures, or that the scientific accuracy of the test was impugned by the circumstances surrounding it (cf. People v. Ward, 14 Misc 2d 518; People v. Maxwell, 18 Misc 2d 1004).
The judgment is therefore affirmed. Submit order on notice.